This is the case of Audrey Gorgonzola et al. versus Director of the United States Office of Personnel Management. Ms. Marcus. Thank you, Your Honor. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent Appellant, the Acting Director of OPM. With the Court's leave, I'd like to reserve five minutes for rebuttal. That is granted, Ms. Marcus. Now, let me, for purposes of clarification and perhaps directing where we go from here in argument, we ask if the government, if the department concedes that they owe the members of the class whatever the amounts are later to be determined, pursuant to what I read was the charge given by Congress in the statute it adopted years ago. OPM does not concede that it legally, there is a legal obligation. OPM acknowledges that... Either there is a legal obligation, or there's no obligation at all. Otherwise, we wouldn't be before the Court of Appeals. I mean, it does lead me to, this is not an existential question. Why are we here? Well, the government does make litigation determinations, and in this case, OPM had taken the position that the 2002 Act did not apply retroactively. The MSPB disagreed with that in the Lipman decision in a non-precedential decision, and that's where the distinction between a legal obligation or a legal concession and what OPM as a policy matter decided to do. And it acknowledges that the board did rule this way in a case that had quite a few joint appeals to the MSPB. Well, perhaps this occurred pursuant to the MSPB's decision, but did not Judge Hornak observe at some point during the torturous procedural history of this case that the Office of Personnel Management, that the government had acknowledged that it was obligated, I presume legally, to make these payments, whatever amount they might be? Judge Hornak did opine that in his view that there might be judicial estoppel, but we disagree with that, and we have made clear there are many places in the record, if you look, we put in the He did find it to be judicial estoppel, and that was based upon his understanding, his reading, his understanding of the record, that an acknowledgement of such an obligation had been made, didn't he? We respectfully disagree with that reading of the record. With his reading or with my understanding of what he said? He, I believe that he did read certain representations in the case that way. And earlier on in the case, we have repeatedly, including in the joint appendix, in defendants' response to the statement of material facts that are not in dispute. And there are a number of places in the record in the pleadings where OPM has made it clear that yes, and I do want to make clear, Your Honor, that we are not disputing now that if this court were to rule for us in this appeal and hold that the district court lacks jurisdiction, and therefore the notice and hold back orders need to be vacated, OPM will go forward with recalculation and payment. Let me refine my question. Is OPM required to provide notice to the class? That's what the class action is all about. No, Your Honor, it is not legally required to provide notice. However, OPM did and the district court here lacked jurisdiction to even make that determination. Now, that's a legal argument between us and the plaintiffs. I mean, that determination was made by the district court, I won't say early on, but along the way in a summary judgment motion, I guess, or a partial summary judgment motion, right? Yes. Yes. And after the legal ruling on the summary judgment motion, the court then entered the first of the notice orders from which we appeal. And then also, in addition, even though the court's underlying legal ruling, the court here was attempting to carve out these notice claims, but the CSRA precludes plaintiff's claims in their entirety. You can't carve out that aspect of their claim there. The underlying relief that the plaintiffs want here, the notice is a means to get recalculation and payment. And this attempted carve out circumvents the exclusive remedial provisions of – We're all here talking about these procedural niceties. In the meantime, people in the class are dying and could really use the money. We're in the justice business. You are, too. Is this thing going to keep dragging on forever if you get your relief? Are they going to get what they're entitled to under Congress's view? We – and we stated this in response to the – we stated it explicitly in our supplemental brief. We stated in district court that we – that the agency – the agency has, as you know, already sent out over 7,000 notices. And it is – No one denies that there has been a lot of process here, including the sending of notice. And I want to – and I want to give my colleague, Judge Beavis, a chance to ask a question because he has one. But let me just put one point of emphasis on Judge Shigera's question. OPM changed its internal policy March 4, 2009. Your – My understanding. That's now more than 10 years ago. Your Honor, we would respectfully point out that OPM had – it did make the policy decision, that's right, and actually had begun for people that it had identified that would be eligible. It had actually begun recalculating and paying. And it wasn't until the district court, at plaintiff's behest in this class action, entered the 23D order that OPM stopped. And that was in 2011. And OPM was prevented from doing the recalculation and payments from 2011 to 2017. Now, at this point, as we've made clear, OPM – the problem is that the district court didn't just order notice. It ordered – and this is part of the notice itself – says to the potential class members that the court has ordered OPM to hold back 30% of any of the payments that if the person is determined eligible and is going to receive a payment of the benefits due, then OPM would be required by the district court to withhold 30%. Now, first, we think that proves why this – the district court's carve-out for jurisdiction fails. It shows that the court is trying to direct how OPM pays out money that the court doesn't have to order. Let's let Judge Bevis get in with his question, because we've got to move on to appellate jurisdiction. Right. Yes. I understand your point that you're making now, but we have to decide, first of all, I mean, in the supplemental briefing, whether this case is moot. And that depends on how we conceptualize the case. So appellees understand this is a case about sending out notice. The notices went out. That's done. The cat's out of the bag. And your contention is there's more to go on afterwards. If we do not find this case moot, what do you do afterwards? Are you planning to send out supplemental notices? Do you want to do other things that would be affected by this ruling? And so generally, and then number two, if the supplemental notices and other things you want to do relate to the holdback of attorney's fees, why isn't your case captured by the attorney's fees can't make an otherwise moot claim live? Your Honor, what the agency would do if the court holds that this is not moot and rules in our favor, is it would actually do the recalculations and payments as it would in its normal administrative processes. Because if, and there are the cases, it's true that some interlocutory appeals of injunctions become moot if the party complies with the injunction. And there's no more effective relief the court can grant. But here, as we pointed out, the notices themselves actually state that OPM would have to hold back 30% of the payments. That can be changed. If they're in list one, a very, very large percentage of the people would be eligible for the recalculations. How about the notice orders, though? It seems that you're, how's that, how are they not moot? You can't undo those, can you? You've fully complied, haven't you, with respect to list one, two, and three? We have complied with the issuance of the notice, but we can issue further notice, just as in the Zabo case that we referred to in the Seventh Circuit. And in that case, a company was adjudged in contempt. And even though the company had actually complied with the order's terms, including the requirement that it notify its own employees that had been held in contempt, the court said it can now notify its employees that that was reversed. And here, if the agency sends someone a final determination saying, you know, here's a payment that you're, we found you're eligible, here's a payment you're entitled to, and we're not withholding 30%, that's correcting what is in that notice order. And the notice order was to, directed OPM, to issue notice in the form. So you understand the two orders under appeal here to forbid you to send out any further notice because it would contradict or undercut the notices you were required to send out? Yes. Any further, at this point, unless this court were, and we are asking this court to vacate the notice order so we would be able to do that. What would you say in an amended order that went out to everybody? Oh, and Your Honor, and I don't know exactly what the, any further notice would say, but as I said, one of the things the agency plans to do if the district court orders were vacated is to go forward with the recalculation and the payment. And that final determination that's sent to a claimant would show and say that nothing was taken out of it. And that in itself corrects the previous, corrects the previous notice order. And also, because our position is that the district court lacked jurisdiction to enter either of these orders, it would correct the legal error in the whole order. And I see my initial time is up. If the court has any more questions now. Thank you. We'll have you back on the vote. OK, thank you. Ms. Davidson-Welling. Davidson-Welling. Good morning. Maureen Davidson-Welling on behalf of appellees and the class. And just responding to what counsel for DOJ and OPM said, you know, they have they in response to the first question they were asked, they denied an obligation to do to actually make those payments. Right. And, you know, in response, although they're saying that, well, if this case goes away, they'll do that. They did the exact same thing at the district court where they were trying to get this case mooted. And they went through and when they and, you know, they said, hey, look, we're going to do this. And then when that didn't work out. It was back in 2013. In 2013, they turned they turned around after the court said it wasn't going to give up. It wasn't going to, you know, give up the case dismiss this move because they said they were going to do that. So there seemed to be some kind of controversy arise over the district court's order that there not be contact with members of the class. That was 2013, wasn't it? That was that was around. And that's and that's actually not an unusual practice order in class actions. I'm well aware. But that order was eventually lifted. Is that or modified? Correct. That that order was modified and OPM was permitted to make payments and communicate with the class in order to effectuated notice. Did OPM back sometime in 2013 argue to the district court that no dispute exists between the parties? So they say that they they did argue that there was no no dispute between the parties and that they would they would provide the notice that was granted. There was no dispute as their obligations. I also like to point out that there are there are dental auxiliaries and physicians assistants who are also covered by the same Enhancement Act. That's retroactive. And there's no dispute that they are out that there's no reason that OPM couldn't have paid them in the decades since it it adopted its policy. And they haven't. They haven't identified or notified those people. You hear them sitting here today and saying, oh, they would do this. But they've had 10 years to do that for individuals where there has been no barrier and they haven't. And so, you know, I suppose in fairness, there is a lot of people that they have to deal with to calculate. They have to go through a lot of records, I guess. Well, I mean, respectfully, that was that was an argument that they had made at the beginning of the case. But in fact, within a few months, they began admitting that they could run a database search, identify people and then, you know, and then, you know, just pull out the specific records. We're focusing and have been for the last so many minutes on appellate jurisdiction. And if I'm correct, if I read your position correctly, you've argued that the two notice orders merely clarify an earlier order that did constitute the giving of the direction of injunctive relief. That's correct. We believe that the that the injunctive relief came from Wigton 3, which was passed in April of 20, which was entered in April of 2017. And the OPM did not appeal for four or six months later. Well, beyond that, the April 2017 order didn't direct OPM to send out notice, did it? So what what it did was it it said that they would they were going to have to identify, notify the class and directed that to submit a plan stating what those was that a yes or no? Pretty important question as to whether or not it acts, those that order actually granted injunctive relief or whether it merely or whether the notice orders clarify subsequently. Yes, it did grant injunctive relief. You know, that required them to submit a plan. But until they had the plan, it's going to be these lists and this kind of notice. They don't. OPM didn't know what it was actually supposed to do until I got the August 17th notice for list one and three and then the February 18th notice for list two. So this is a plan or a framework, whether that's appealable or not. These two individual ones are the actual injunctions that themselves are appealable. So under this court's precedents in Frederick, Frederick, Frederick says the earlier one can be appealable. It doesn't say the later ones can't also be appealable as injunctions. It does not also say that. So. But with respect to those, you know, our view that is injunctive relief that the later notices just, you know, adopted and, you know, approved joint jointly submitted and agreed upon language for notices. OK, next, next, next step then. Has OPM provided notice to everybody on list one, two and three? Well, so on. So OPM has has sent out the notices to list one in 2017 to list two in 2018. List three, as we pointed out in our mootness submission, that there was actually a separate notice or a separate order that was entered by the district court for a new list three notice. And so that that part part of list one notice order has been superseded in the district court. So mooted by. But your adversaries contention is they'd like to send out further notices. If they sent out further notices that were inconsistent, we're not going to be holding back, et cetera. Wouldn't that be a violation of these two notice orders of the August 2017 and February 2018? So under way to three, they were they were required to identify and notify the class. Are they forbidden by the district court by these orders to send out the later notices? They would like to send out saying, no, we're not going to hold back. There's nothing in those those notices that says they can't they can't do that now with respect to whether they but they don't have the district courts imprimatur to do that. But they're seeking from us the removal of a ruling that they construe as forbidding them. Now, the question is, are you going to concede? No, that ruling doesn't prevent them from doing that. In which case you're taking the position it's moot or yes. The ruling prevents them from sending these things, in which case it's not. What's your position? Our position is that those those notice orders have been complied with. Those notices have been sent out and any just what they would in your position, would they be in violation of these orders if they sent out notices saying, no, we're not going to withhold? No, we're not going to hold back. They would be in violation of Wigton three's language, saying that they were that they were required to hold back, which has very clear command language that they did not appeal. All that hold back orders a misnomer because all it does is set the percentage. There's no command language in that in that order at all. OK, but if they sent out the notices, the notices themselves, you don't you take the position they're not forbidden to send out a later set of notices. I take the position that they are forbidden to send. Then how can it be moot? How can it be moot if they are forbidden to send out supplemental notices? Because it if they were there for their forbidden under Wigton under Wigton three, they had to provide notices that were approved and those went. And that said, there had to be approved notices that went out. The notices were then approved. OK, so so Wigton three authorized but told them to send out notices. But is your reading that the ruling forbids them to send out additional notices that contradict the earlier notices? I think Wigton three's requirement that there be injunctive, that there be a hold back would forbid them from sending it. Well, that they don't have the courts and promoter. And yes, it does. Because Wigton three says that the hold back order is is it limits what is permitted. Wigton three has language in it which says specifically that the limitations on communications between OPM and the class are specifically lifted for the later notice orders that are sent out. That are approved. Notices that are not approved would be in violation of that language in the Wigton three order. And so you're arguing it's not moot and it comes down to either the hold back order itself is not independently appealable or they failed to appeal the correct order. But in our view, the specific notice orders are moot. The language in which we can wait to three that that that order was not timely appealed and is not otherwise it's not reviewable as an injunction because it's not substantive. OK, well, we'll hear from your adversary on her position on this. You would you still have you still have plenty of time. Yeah. Sorry. I didn't mean to shut you down. You're on your next issue. I didn't. Yeah. Sorry. Yeah. All right. We just we're we're finished interrupting you for now. Thank you, Your Honor, for that clarification. Yes. So. So. So let me let me turn briefly to another another issue, which was the, you know, the hold back, which, as I mentioned, it's a misnomer and we don't think it's appealable here. And that's not as we know, the hold back order is not moot. But it's but it's it's never been it's never been reviewable. Now, it's non-substantive. It's temporary because it's procedural. It's procedural. Exactly. But even if you were to reach that issue, you know, the you know, they OK. Argument is basically, well, it's not it's not logical that if you don't if you only have notice over substantive claims that you you know that you could have just district court jurisdiction over the fees. But that but that's part of the district court's normal jurisdiction. Right. And we've cited a whole bunch of cases which does not dispute which show that common fund and you know that you can have a common fund fee award in a case like this. I think you've got to I see a basic conceptual problem here for you to have jurisdiction. It has to be the case that this procedures for how to adjudicate the claims are different from the what benefits are entitled to, which would have to go through MSPB and all. So that's that's the basis of jurisdiction. This is something different from the kinds of benefits claims under the statute that have to go there. But if this is not about what benefits, how can it be a common fund if this is about the procedures for adjudicating and not about the corpus of money that you're ultimately entitled to? Where's the fund coming from if this is not a dollars and cents claims? So so the fund the fund is created. Right. And so, you know, as we noted that and and Supreme Court presidents are clear that you can have a fund can be created by stare decisis. You know, I think we cited the language from one of the D.C. circuit cases where in this in this area, some version of the callous theory can apply. Right here. What we had was we have a class. There is, you know, you know, we threw this lawsuit. It was discovered that they do have this policy which applies to everybody. And, you know, as a result of identification relief, what OPM has said, this is in there, you know, is in the record. Once they know about people and they have no they have no ability to pay them otherwise. So if they know they're owed. Right. So the identification relief in this case and the notice relief in this case means that they will be found by OPM and then it will have to pay them pursuant. And then it's up to OPM. Correct. So this is this is a highly unusual case. Putting aside its chronology, because we have we have a class that has been certified and yet it is a class certified apparently for no purposes other than to provide notice. Which, of course, under 23 C is ordinarily a procedural aspect of every class action. So the class actions occurring in the district court. There can be no common fund here. Can there? There absolutely can be a common power. So. So as a result. So if you look at this case, what happens is there is this a common fund as that concept is known under 23 B1. That. I mean, this is a this is a this is a common fund under the under the Supreme the Supreme Court line of cases. Right. Which which recognize that you can that basically you can where you create a fund for a group of people that they're entitlement to reimbursement of costs. Right. That's, you know, Bowen versus Van Gemert and, you know, the the other cases that we've cited in Mills versus electoral like those cases. So and you don't have to bring you know, that the law is clear under those cases that you don't have to bring the fund into court. And it doesn't have to be in court for the common fund doctrine to apply. What you need is jurisdiction over the parties or control over the fund. And here there are jurisdiction over all the parties. There's a certified class. Okay. Before the court, as well as the plaintiffs. Right. So that you know, that is the you know, we've cited the cases, the cases for that which say exactly. I have forgotten what the certification order says. Was this class certified as a B1 action, a B2 action, a B3 action or all three? The motion was for all three. That I'm pretty certain. The motion was for for all three. I believe it was. And it really looks to me like a B2 action. It's about nothing but injunctive relief. That's correct. This is this is an action. You know, the claims are before the court are only for identification. And how can there ever be a common fund that the district court has anything to do with? So that because what happened is as a result of, you know, and they have OPM admitted this in the briefing below as a result of identification. Once OPM knows that these people are members of the class and subject to the Enhancement Act, they must recalculate their claims. Even if that that's identification and notice inexorably lead to OPM being aware of them. You're stuck on the horns of a dilemma, though. How can we have jurisdiction if you can collapse this into the substantive relief sought? That then suggests it should all go through by MSPB. No. Well, I think so. I think conceptually there are two two different things here. They are. And in fact, the district court has said as much. The district court has ruled on what he has jurisdiction over and what he doesn't have jurisdiction. Correct. Right. And the substantive claims in this case that were before this are before the MSPB. No. For identification and notice relief, which is not available through the MSPB. You just can't get it there. And that, you know, under the standards, you know, in Elgin. Right. Thunder Bay. Free Enterprise. And, you know, where, you know, the basically there is where it is discernible from the factors that Congress would not intend. For instance, where there is, you know, preclusion could foreclose on meaningful judicial relief. The claims are wholly collateral like they are here. And where there is no agency expertise outside of that, then there is just district court jurisdiction. And that that is exactly the jurisdiction over what there's this district court jurisdiction over the claims for identification notice. Right. And that's the claims that the court found. That was the basis for the relief. If you look at the notices that were sent out, you know, those notices like J 975 becomes necessary to litigate individual claims pursuant to notice. That procedure is carried out where all of that is carried out in the in the MSPB. That's what I that was what I said just a moment ago. Right. So once identification fund until you go to the MSPB. Well, so OPM's policy, and I believe this is admitted in the record, was that once it became aware of people and their entitlement, it is required to pay them. You know, under OPM versus Richmond, they have admitted they don't. Once they are once they become aware of them, they have their obligation is to recalculate on their own without anyone even claiming in. Now, what that what that will yield or one of the reasons, you know, like the notices say, you know, if you look at like J 975, the notices are clear. What you get is that OPM say, OK, you're going to be entitled to you get this notice. You're likely entitled. We're going to open the file and render render a decision. Right. And that's what the notices say. There's going to be decisions issued. If you look at that J 975, this is the notice list for notice 973, 976. There will be an administrative procedure as a result of the notices in this case. And they will and they are entitled. There's no hope. Kim has said over and over again that they are entitled under the eligibility standard. There's no dispute as to that. Thank you. Ms. Davidson here from Marcus. Thank you, your honor. There is a quote we have from the Elgin decision in our reply brief that I think is directly on point here. And reflect some of the questions your honor was asking opposing counsel. The Supreme Court rejected an analogous argument in that case about the constitutional claims in that case being wholly collateral and said constitutional claims are the vehicle by which the plaintiffs seek to reverse the removal decisions to return to federal employment and to receive the compensation they would have earned. This is very what plaintiffs are seeking here is the recalculation and payment. And in fact, the notices themselves, if you look at J.A. 1048, says, what if I disagree with OPM's recalculation decision? You have a right to challenge OPM decision on your eligibility for an additional annuity in the normal administrative process, including by appealing a final agency decision to the MSPB. That means that if OPM does a file review and says, oh, this person actually doesn't have part time service or this person does have part time service, but was previously compensated for that, there could be all sorts of things. And those people would even pursuant to these notices be going to the MSPB. It just it's the type of piecemeal litigation that the CSRA was intended to preclude. That's why Congress enacted it. And we want to balance Thunder Basin factors like, you know, the there is available review through OPM, but this is collateral and these don't really look like claims under the act. They look like they're claims about how the act gets applied. But are they claims under the act? Yes, because if you look at the amended complaint, your honor, it is seeking recalculation and payment as well. Notice is a means by which to get there. I'd also refer your honor to this court's, albeit unpublished, very recent decision in Lampan Paz, where the plaintiff there asserted that his retirement benefit claim was was not precluded by the CSRA, because he was just alleging negligence in how the agency applied it. And that was an FTCA claim in his view. But this court rejected that and cited all of the same cases we're citing here. And we also think the district court didn't have the benefit of this court's decision in Semper, which makes clear that if there is meaningful review, that Elgin, that Elgin did basically overrule this court's previous decision in Mitchum v. Hunt, that you so that you can't you can no longer get injunctive relief for a constitutional claim. And here the district court was basing this notice and hold back orders in part on its finding on the equal protection claim. Could I ask you to respond? Your opponent's position is that the only thing that prevents you from sending out supplemental notices is not the notice orders below, but it's the hold back. It's Wigton three. It's hold back. So that's not that part's not moot, but that's not appealable yet. And the notice orders themselves are moot. What would you say in response? The notice order has harmed the agency by interfering with its ordinary relationship with the new agents and requiring the agency to say that it is going to do something that it thinks is illegal. But the continuing effects are whether there is a ban on sending the further notices. Yes. Right. But your your adversary's position is any ban comes from Wigton three and a hold back order. That's not appealable because it's it's procedural. Your Honor, the injunction, the notice orders themselves are what the court, the court ordered notice and it ordered it in a form that was attached to the parties. It actually ordered these specific notices. And so a form that it was a form that counsel consulted on and agreed upon, wasn't it? Yes, Your Honor. But that that again, doesn't that was always subject to the objections that OPM had to jurisdiction. And in the joint status report, there are footnotes included in each one where OPM preserved its objections. And in the interest. And so just by. And I think, in fact, if your honor held that the notice orders weren't appealable because of the previous ruling, that would encourage premature appeals. In fact, the parties are still disagreeing about this for notice. And that's another reason this whole issue is not even with respect to just notice is certainly not moot, because there is an ongoing case or controversy between the parties about extent of notice. But in any event, the the notice orders are injunctive orders that were enforceable by contempt. And in and once and that those were appealed in conjunction with the whole back order. And in fact, it's part of the notice required that the agency is objecting to that. What the agency is seeking now is those orders to be vacated so it can proceed without the whole back. And that's. And thank you. Thank you very much, your honor. I tried various roles and at various times in life not to use extravagant language. But I think this case is a disgrace. Congress passed the Department of Veterans Affairs Health Care Programs Enhancement Act on January 23, 2002, aimed at providing relief to various people, nurses and related professions. And as Garis noted earlier, some of those people, including, I think, a named party in the class action has passed away. Meanwhile, this is not the kind of case based on its history that I can think that I can say that I can even suggest to be subject to. To some kind of negotiation settlement mediation. It apparently is going to be for this court to do what it can to move the matter forward. That, however, in my humble opinion, is regrettable at this point in time. I'll ask the crier to recess the.